**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JERI T.,<br><br>*Plaintiff*,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>*Defendant*. | Case No. 24-cv-09864<br><br>Hon. Beth W. Jantz |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Jeri T.'s[1] application for Disability Insurance Benefits ("DIB"). The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. 6.) For the reasons stated below, Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security (Dkt. 11) is GRANTED, and Defendant's Motion for Summary Judgment (Dkt. 14) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**BACKGROUND**

On February 12, 2020, Plaintiff Jeri T. filed an application for DIB under Title II of the Social Security Act, alleging disability beginning February 7, 2017. (R. 66, 163.) The claim was denied initially and upon reconsideration. (*Id.* at 48, 59.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 92–93.) On May 17, 2021, a telephone hearing was

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name.

held before ALJ Kevin Vodak, at which Plaintiff appeared and testified, along with a vocational expert. (*Id.* at 12–38.) The ALJ issued an unfavorable decision on July 29, 2021. (*Id.* at 63–74.) Plaintiff sought review by the Appeals Council, which denied the request for review. (*Id.* at 1–3.)

Plaintiff filed a civil action in the United States District Court for the Northern District of Illinois on February 9, 2022, seeking judicial review pursuant to 42 U.S.C. § 405(g). (R. 1126–1127.) On September 19, 2022, the District Court granted an agreed motion for reversal and remand for further administrative proceedings. (*Id.* at 1135–36.) The Appeals Council subsequently vacated the final decision of the Commissioner and remanded the case to an ALJ on January 27, 2023. (*Id.* at 1140–45.) As part of the remand order, the Appeals Council specifically instructed the ALJ to resolve the following issues: (1) "The hearing decision does not contain an adequate evaluation of the medical source opinion by orthopedic surgeon Steven Gitelis, M.D."; (2) "The hearing decision does not provide legally sufficient explanation for finding the claimant's alleged symptoms are not entirely consistent with the medical and other evidence of record;" and (3) "The decision does not sufficiently explain why the claimant's osteoarthritis of hands was nonsevere, despite noting that an imaging report shows severe arthritis in the carpometacarpal joint." (*Id.* at 1142–43.)

On July 17, 2023, a second telephone hearing was held before ALJ Vodak. (R. 1065–1117.) Along with Plaintiff and counsel, a medical expert, Mark Stevens, M.D., and a vocational expert, James Radke, also appeared and testified. (*Id.*) Pursuant to the remand order, the Appeals Council directed the ALJ to obtain additional evidence concerning Plaintiff's impairments, give further consideration to medical source opinions, further evaluate Plaintiff's alleged symptoms, reevaluate the nature and severity of Plaintiff's medically determinable impairment of osteoarthritis of the hands, give further consideration to Plaintiff's maximum residual functional capacity, give further

consideration to whether Plaintiff has past relevant work and can perform it, and if warranted, obtain supplemental vocational expert evidence. (*Id.* at 1144.)

On September 18, 2023, ALJ Vodak issued a decision denying benefits. (R. 1043–58.) The ALJ applied the five-step sequential evaluation process for disability claims set forth in 20 C.F.R. § 404.1520(a). (*Id.* at 1047.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of February 7, 2017 through her date last insured of March 31, 2022. (*Id.* at 1049.) The ALJ noted that Plaintiff worked after the alleged disability onset date but found this work activity did not rise to the level of substantial gainful activity, as Plaintiff testified to working for no more than two weeks in 2018. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: left scapulectomy for chondrosarcoma and osteoarthritis in the hands. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 1050.) The ALJ evaluated Plaintiff's left scapulectomy for chondrosarcoma under Listings 1.18 and 13.11, and also evaluated Plaintiff's osteoarthritis of the hands under Listing 1.18. (*Id.*) The ALJ then determined that Plaintiff had the residual functional capacity to perform light work with additional limitations, including lifting or carrying 20 pounds occasionally and less than 10 pounds frequently with the left upper extremity; no overhead reaching with the left upper extremity; frequent reaching in all other directions bilaterally; frequent handling bilaterally; occasional pushing or pulling with the left upper extremity; and various postural and environmental limitations not relevant to this opinion. (*Id.* at 1050–58.) At step four, relying on the vocational expert's testimony, the ALJ found that Plaintiff was capable of performing past relevant work as an office manager.

(*Id.* at 1058.) The ALJ therefore concluded that Plaintiff was not under a disability from February 7, 2017 through March 31, 2022. (*Id.*)

Plaintiff sought review by the Appeals Council, and the request for review was denied, rendering the ALJ's decision the final decision of the Commissioner. (*See* Dkt. 1 at 1.) Plaintiff challenges the Commissioner's final decision denying her Title II application for DIB, and the matter is before this Court for judicial review. (*Id.*)

## DISCUSSION

### I. Standard of Review

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. § 405(g).

## II. The ALJ's Treatment of Dr. Stevens's Medical Expert Opinion

Plaintiff raises two principal challenges to the ALJ's decision. Plaintiff contends that the ALJ erred in his assessment by (1) failing to adequately evaluate the opinion of the medical expert, Dr. Stevens[2]; and (2) failing to conduct a proper symptom evaluation. (*See* Dkt. 11 at 4–14.) As discussed below, because the ALJ's failure to appropriately weigh Dr. Stevens's opinion alone warrants remand, the Court will not address, and thus makes no ruling on, Plaintiff's other argument.

First, the Court finds that the ALJ did not adequately explain his rejection of material portions of Dr. Stevens's medical-expert opinion. While the ALJ was not required to adopt Dr. Stevens's opinion wholesale, the ALJ recognized Dr. Stevens as the only medical source to review the full record, found his opinion partially persuasive, but then rejected important portions of that opinion without sufficiently explaining *why* they were unsupported or inconsistent with the record. (R. 1056.) Specifically, Dr. Stevens opined, among other things, that Plaintiff's impairments medically *equaled* Listing 1.18 during a closed period and that Plaintiff was limited to reaching with the left upper extremity for 60 percent of the workday. (*Id.* at 1083–84, 1092–93.) The ALJ's ensuing analysis did not satisfy 20 C.F.R. § 404.1520c(b)(2), as required and as follows.

During the July 17, 2023 hearing, Dr. Stevens opined that Plaintiff's impairments medically equaled Listing 1.18 during the January 7, 2017 to December 31, 2018 period. (R. 1082–84.) The ALJ referenced Dr. Stevens's testimony in his decision, stating, "medical expert Dr. Stevens endorsed meeting listing 13.11 and 1.18 on account of the claimant['s] extensive left shoulder

[2] Dr. Stevens was a medical expert retained by the Social Security Administration to provide an "impartial and neutral medical opinion" (R. 1081), in accordance with the Appeals Council's remand order directing the ALJ to obtain additional medical evidence (*id.* at 1144).

surgery and more than 1 year of physical therapy, multiple medical visits, and useless left arm."[3] (*Id.* at 1055.) The ALJ ultimately found Dr. Stevens's opinion "unpersuasive," in part, because "medical expert Dr. Stevens admitted that the instant case was the first case involving a tumor in which he evaluated under the listings." (*Id.* at 1055–56.) Later, the ALJ cited Plaintiff's daily activities and specific objective findings[4] to demonstrate, in the ALJ's view, that the record evidence failed to *satisfy* the Listing requirements. (*Id.* at 1056 (emphasis added).)

But, with respect to this second reason, the ALJ's decision never meaningfully engaged with the medical-*equivalence* component of Dr. Stevens's opinion. Whether an impairment *meets* a listing and whether it medically *equals* a listing are distinct step-three inquiries. *See Jonie G. v. Saul*, No. 18 CV 50100, 2019 U.S. Dist. LEXIS 212282, at *16 (N.D. Ill. Dec. 10, 2019) (remanding where the ALJ only found that Plaintiff's impairment did not meet a listing while remaining silent on medical equivalence). Medical equivalence may exist even when a claimant does not exhibit one or more of the findings detailed in a listing, or does not exhibit them to the specified degree, if the claimant has other impairments that are at least equal in severity and duration to the criteria of a listed impairment. *Id.*; *see* 20 C.F.R. § 404.1526(a) ("Your impairment(s) is medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment."); Soc. Sec. Ruling 17-2p, *Evidence Needed by Adjudicators at the Hearings and Appeals Council Levels of the Administrative Review Process to Make Findings about Medical Equivalence*, 82 Fed. Reg. 15,263 (Mar. 27, 2017) ("If an individual

---

[3] Because Plaintiff principally challenges the ALJ's failure to address equivalence as to Listing 1.18 (and that error requires remand), the Court focuses on that issue. (*See* Dkt. 11 at 6.)

[4] The ALJ relied on the following objective findings: "full 5/5 strength throughout her bilateral upper and lower extremities, including 5/5 handgrip, and no motor or sensory deficits." (R. 1056.)

has an impairment(s) that does not meet all of the requirements of a listing, we then determine whether the individual's impairment(s) medically equals a listed impairment.").

That distinction matters here because Dr. Stevens expressly testified that Plaintiff's impairments medically equaled Listing 1.18 during a closed period. (R. 1083–84.) The significance of that testimony is heightened because the prior remand required further development of the medical evidence, and the ALJ obtained Dr. Stevens's testimony as part of that process. (*Id.* at 1144.) The ALJ was not required to accept Dr. Stevens's opinion, but the decision had to provide enough explanation to permit the Court to determine whether the ALJ considered and rejected his equivalence analysis. *See Warnell v. O'Malley*, 97 F.4th at 1054. The ALJ's statement that the Listing requirements were not "satisfied" does not provide that explanation because it does not reveal whether the ALJ considered medical equivalence or evaluated only whether Plaintiff met the Listing's specific criteria.

Social Security Ruling ("SSR") 17-2p specifically addresses how an ALJ must proceed when a medical expert states that a claimant's impairments medically equal a listed impairment: "If the ME states that the individual's impairment(s) medically equals a listed impairment, the adjudicator must ask the ME to identify medical evidence in the record that supports the ME's statements. Adjudicators will consider ME testimony and interrogatories using our rules for considering evidence. The adjudicator will then consider whether an individual's impairment(s) medically equals a listing." SSR 17-2p, 82 Fed. Reg. at 15,263. This policy interpretation further provides that an ALJ "must consider all evidence" in making a finding about medical equivalence. *Id.* Dr. Stevens's testimony that Plaintiff's impairments medically equaled Listing 1.18 obligated the ALJ to consider Dr. Stevens's opinion about equivalence and explain *why* it was unsupported or

inconsistent with the record.[5] *See* 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be.").

The ALJ did not do so here. The Commissioner identifies no portion of the decision in which the ALJ adequately evaluated the medical-equivalence aspect of Dr. Stevens's opinion. Although the section header in the ALJ's opinion stated that Plaintiff did not have an impairment or combination of impairments that "met or medically equaled" a listed impairment (R. 1050), the ensuing analysis stated only that Dr. Stevens had not identified evidence establishing satisfaction of the specific listing requirements and that Listing 1.18 therefore was "not satisfied." (*Id.* at 1055–56 ("Dr. Stevens was unable to provide any evidence in support of satisfaction of the specific listing requirements. For these reasons, I have not adopted Dr. Steven[s]'s opinion and find that listing 1.18 is not satisfied.").) In context, that statement does not disclose whether the ALJ considered Dr. Stevens's equivalence opinion under the distinct regulatory framework governing medical equivalence. Nor did the ALJ explain why the evidence Dr. Stevens identified failed to support equivalence or why his equivalence opinion was inconsistent with the record. (*Id.* at 1082–1084.) Because the Court cannot discern whether the ALJ considered and rejected that material opinion on equivalence or just failed to evaluate it, the omission prevents meaningful review. *See Jonie G.*, 2019 U.S. Dist. LEXIS 212282, at *16; *see also Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020) ("ALJs need not address every piece of evidence in the record . . . but an ALJ may not ignore an entire line of evidence contrary to her ruling." (citation omitted)). And where the Court cannot discern whether the ALJ considered and rejected pertinent evidence, or instead failed to consider

[5] Dr. Stevens's testimony, in pertinent part, was as follows: "Q [ALJ Vodak]: Okay. Okay. So then moving on, first of all if we look at listing 1.18 was that matter medically **equaled** at any point? . . . A [Dr. Stevens]: [Y]eah, that certainly would fit also." (R. 1083–84 (emphasis added).)

it at all, the ALJ has not built the required logical bridge. *Plessinger v. Berryhill*, 900 F.3d 909, 917 (7th Cir. 2018) ("We could not discern from the ALJ's scant analysis whether [the ALJ] considered and dismissed, or completely failed to consider, this pertinent evidence, so the ALJ did not build a logical bridge from the evidence to his conclusion." (internal quotation marks omitted)).

Nor may the Commissioner supply the missing explanation after the fact. The Court reviews the reasons the ALJ gave, not post hoc rationalizations later advanced in litigation. *See Hejna v. Bisignano,* No. 19-cv-5998, 2025 U.S. Dist. LEXIS 168874, at *4 (N.D. Ill. Aug. 29, 2025). The Commissioner points to evidence that Plaintiff did not use an assistive device, had some normal strength findings, and engaged in activities such as fishing or kayaking. (Dkt. 14 at 3–4.) True, the ALJ did reference these findings, but he did not himself connect those facts to any reasoned rejection of Dr. Stevens's medical-equivalence opinion. (R. 1056.) At most, the decision summarized activities and objective findings; it did not explain why those facts rendered Dr. Stevens's equivalence opinion unsupported or inconsistent. *See Charles B. v. Saul*, No. 18 C 1377, 2019 U.S. Dist. LEXIS 128491, at *31–32 (N.D. Ill. Aug. 1, 2019) ("Without an explanation of how the ALJ reached his conclusion that [the doctor's] opinions were inconsistent with [the claimants] normal muscle strength in his extremities, the ALJ failed to build the requisite 'logical bridge' between the evidence and his rejection of [the doctor's] opinions." (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)).

What is more, Dr. Stevens identified medical evidence supporting his opinion. He noted that Plaintiff's primary issue was chondrosarcoma of the left scapula necessitating resection of the entire scapula and repair of the rotator cuff into the proximal humerus. (R. 279, 281, 302, 812–13, 1082.) He also identified basal-joint arthritis in both wrists and hands and medial epicondylitis of the left elbow. (*Id.* at 849, 913–14, 1082, 1315.) Dr. Stevens described the surgery as "huge" and

testified that, after surgery and recovery, Plaintiff was left with "basically a useless arm," requiring physical therapy over a prolonged period, multiple doctor visits, and pain medication. (*Id.* at 1083.) While the ALJ was not required to accept this testimony, his perfunctory decision contained no explanation as to why Dr. Stevens's opinion was inconsistent with the record. (*Id.* at 1055–56); *see* 20 C.F.R. § 404.1520c(b)(2) ("Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

The same articulation problem appears in the ALJ's treatment of Dr. Stevens's reaching opinion. At the hearing, Plaintiff's counsel defined the ability to reach "frequently" as reaching for up to two-thirds of the workday in all directions other than overhead. (R. 1091–93.) In response, Dr. Stevens testified that Plaintiff could reach with the left upper extremity 60 percent of the workday. (*Id.* at 1084, 1092–93.) The ALJ rejected that limitation, reasoning that the "measure of 60 percent for frequent" failed to account for a normal break schedule and was unsupported by objective evidence. (*Id.* at 1056.) The ALJ's explanation here, as before, fails to adequately trace the path from the evidence to the conclusion. *See Palmer v. Barnhart*, 40 F. App'x 278, 284 (7th Cir. 2002) ("While the ALJ need not evaluate every piece of testimony and evidence submitted, he must sufficiently articulate his assessment of the evidence to assure this court that he considered the important evidence and to enable this court to trace the path of his reasoning."). Contrary to what was required of him, the ALJ did not engage with ***why*** the "objective medical evidence" undermined Dr. Stevens's reaching limitation. Dr. Stevens identified the medical basis for his opinion (R. 1082–83), and the record contained evidence of significant shoulder and upper-extremity abnormalities. For instance, Plaintiff underwent surgery to remove her scapula in February 2017. (*Id.* at 278–81, 642–44, 996–98.) A July 2018 examination showed right medial epicondyle

tenderness. (*Id.* at 392.) A January 2020 left-shoulder MRI showed mild-to-moderate fatty atrophy of the regional rotator cuff and deltoid musculature. (*Id.* at 435.) A February 2020 examination showed reduced left-shoulder range of motion. (*Id.* at 849.) Plaintiff continued to have range-of-motion deficits and left arm and shoulder tenderness due to her history of scapulectomy. (*Id.* at 703, 705, 717, 721, 747, 755, 760.) A February 2023 examination showed marked tenderness about the right medial epicondyle of the elbow. (*Id.* at 1315.) This evidence, as the Court noted previously, does not compel the ALJ to adopt Dr. Stevens's reaching limitation. However, it does require the ALJ to explain why contrary findings specifically undermine Dr. Stevens's 60-percent reaching limitation. Without that explanation, the Court cannot determine whether the ALJ permissibly weighed competing medical evidence or instead substituted his own lay interpretation of the medical record. *See Mandrell v. Kijakazi*, 25 F.4th 514, 518 (7th Cir. 2022). Dr. Stevens, as the medical expert and only medical professional to review the entire medical record, was better positioned than the ALJ to translate Plaintiff's surgical history, imaging, examinations, pain, and upper-extremity abnormalities into functional reaching limitations.[6] *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Furthermore, these errors were not harmless. If the ALJ had properly evaluated Dr. Stevens's medical-equivalence opinion and credited it, Plaintiff could have been found disabled at Step Three for the closed period from February 7, 2017[7] to December 31, 2018, the point at which Plaintiff's magnetic resonance imaging showed that she was "clear of tumor." (R. 1053, 1055,

---

[6] The Court notes, separately, that it is unclear from the ALJ's decision what the basis was for his assertion that Dr. Stevens's limitation failed "to account for a normal break schedule." (R. 1056.)

[7] While Dr. Stevens opined to a closed period beginning January 7, 2017, as Plaintiff notes in her opening brief (Dkt. 11 at 8 n.5), Dr. Stevens likely meant February 7, 2017, because that date marked the beginning of Plaintiff's alleged disability period. (R. 1047, 1082.)

1082.) Separately and additionally, if the ALJ had properly evaluated Dr. Stevens's 60-percent reaching limitation and credited it, that limitation could affect whether Plaintiff was capable of performing her past relevant work as an office manager. And crucially, the vocational expert's testimony strongly suggested that the 60-percent left-upper-extremity reaching limitation was potentially outcome-determinative. *(Id*. at 1110–11 ("Well, the office manager job . . . has frequent reaching which you appropriately quoted to the doctor was up to 66%. So it is possible that she might not be able to perform the full range of duties as an office manager then.").) The Court therefore cannot say with great confidence that the ALJ would reach the same result on remand. *Cf. Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.").

Accordingly, remand is required. The Court does not hold that Dr. Stevens's opinions must be credited or that Plaintiff's impairments necessarily medically equaled Listing 1.18 or that Plaintiff was limited to 60-percent reaching. The Court holds only that the ALJ failed to adequately articulate why those material portions of the medical expert's opinion were unsupported or inconsistent with the record, and that this failure prevents meaningful review by this Court. In light of the Court's decision to remand on that issue, the Court need not address Plaintiff's remaining arguments. The Commissioner should not, however, construe the Court's silence as an indication that the ALJ's adjudication was appropriate as to any outstanding issues.

**CONCLUSION**

For the reasons stated above, Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security (Dkt. 11) is GRANTED, and Defendant's Motion for Summary

Judgment (Dkt. 14) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED.

DATED: September 30, 2026

HON. BETH W. JANTZ
U.S. Magistrate Judge